8512

## HOLLIDAY v. G. H. PEGRAM & CO.

1. EVIDENCE—RES ADJUDICATA.—Where on a former trial, certain letters offered in evidence were held by this Court not sufficient to show an agreement between the parties, on a subsequent trial, this ruling is *res judicata* of that question.

     MR. JUSTICE HYDRICK, *with whom concurs* MR. JUSTICE WOODS, *thinks the Court did not so hold as to the letters.*

2. IBID.—CONTRACTS.—Where the evidence shows parties intended to enter into a written contract but could never agree as to the terms of the instrument, there was no binding contract.

3. REAL PROPERTY—LANDLORD AND TENANT—RENT.—Where one party goes into possession of a warehouse under an agreement to execute a written contract of rent, but the contract is never executed because they could not agree on the terms, the tenant is liable for reasonable rent.

Before DEVORE, J., Florence, April term, 1912. Affirmed.

Action by J. W. Holliday against G. H. Pegram & Co. Plaintiff appeals.

*Messrs. Willcox & Willcox,* for appellant, cite: *Plaintiff is entitled to verdict for contract price:* 59 S. C. 581. *Jury*

*should find what agreement had been made:* 19 S. C. 367.
*Parol evidence is admissible where contract is not wholly
in writing:* 54 S. C. 314.

*Messrs. Ragsdale & Whiting,* contra, cite: *Rulings of
Supreme Court on former appeal are res adjudicata:* 93 S.
C. 148.   *There is no contract here until written draft is
signed:* 41 Am. St. R. 545; 20 Wall. 546;   23 C. C. A.
204; 19 Johns 212; 10 Nev. 135; 10 Me. App. 106; 46 Vt.
478; 101 U. S. 43; 146 U. S. 483; 4 Wheat. 225; 103 U. S.
155; 90 U. S. 85; 2 Hall 176; 10 Paige 526.

April 8, 1913.   The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE GARY.   There was a formal appeal
in this case, from the judgment entered upon a verdict, ren-
dered by the jury in favor of the plaintiff for the amount
claimed, which was set aside and the case remanded for a
new trial (89 S. C. 73).

On the second trial the same letters which were intro-
duced on the first, were again offered in evidence by the
plaintiff.   He also offered in evidence all the proposed
written agreements, which, on his motion, were excluded
upon the former trial.

The plaintiff also testified in detail as to the transactions
that took place between him and the defendants during the
year 1910, having in view the execution and delivery of a
formal written agreement, which was never signed.

At the close of all the testimony, his Honor, the presid-
ing Judge, directed the jury to render a verdict in favor of
the defendants, and the present appeal is from such ruling.

The first question that will be considered is, whether the
letters marked "A" (dated 10th March, 1910), "B" (dated
20th March, 1910), and "C" (dated 23d March,
1910), constituted an agreement between the plain-
tiff and the defendants.   These letters were among

those offered in evidence on the former trial, and were marked, respectively, "A," "B" and "C."

The Court in construing the letters then under consideration, ruled that they were not sufficient to show an agreement between the said parties.

The construction of the letters was thereafter binding upon the plaintiff and defendants on the principle of *res adjudicata.* *Fraser* v. *Davie,* 15 S. C. 496; *Cartin* v. *Ry.,* 43 S. C. 221, 20 S. E. 979; *Heustess* v. *Ins. Co.,* 93 S. C. 148.

The next question for determination is, whether there was any testimony introduced upon the second trial tending to show an agreement between the said parties.

The plaintiff, on cross-examination, testified as follows: "As a matter of fact, after he (Pegram) got that letter (from the plaintiff to Pegram, dated 20th March, 1910), he came over here and entered into possession, and rode down the country, and took up the question of entering into an agreement with you? Yes, sir. When he came down there, you and he couldn't agree upon the terms of the written agreement? I had drawn up this first agreement. Whichever one you offered him, he wouldn't agree to it? No, sir. You offered him a paper and he refused to sign it? Yes, sir. He wanted other things put in? Yes, sir. They were not put in at that time? No, sir. You didn't go into a written agreement at that time? No, sir. You never did go into a written agreement with him? No, sir. He met you down there at your house, according to your letter you wrote him? Yes, sir. Then you agreed to come here to Florence, or to meet in Florence? I told him I was going to Dillon, and I would stop and prepare another, as per our agreement, which is the second copy, and I would stop by and see him then. Then you offered him this contract, and this he refused to sign? Yes, sir. Then he had a contract prepared which he offered to you, as to what he

thought? He said he wanted me to put in that second contract—(interrupting). You offered him a contract which he refused to sign, and then he had a contract prepared which you refused to sign? Yes, sir. You never could come into any written contract between you, you contending for things you thought were right, and your minds couldn't agree upon the terms of the contract? No, sir; we would agree as to those I wrote up, but each time he would infuse foreign matter; not on my part, but on his part. But your minds wouldn't meet, because each time he would say something ought to be put in there, which was not put in there, and that was the reason you couldn't go into the contract? Not reduced to writing. All the time he contended for one thing and you for something else; that is right? He was infusing foreign matter. He was always contending for something you wouldn't consent to? Yes, sir. There was some differences between you; he was claiming something you wouldn't consent to? Yes, sir. You never could reach an agreement in writing, although you tried and *you were to do it?* Yes, sir." (Italics ours.)

In all the negotiations between the parties, it clearly appears they contemplated that the agreement should be reduced to writing before it should become effective, in order that all misunderstandings that might arise would thereby be obviated.

The following authorities show that as the minds of the parties never met, there never was a valid agreement between them:

"It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another, imposes no obligation upon the former until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of an agreement have received the assent of both parties, the negotiation is open and

imposes no obligation upon either." *Eliason* v. *Henshaw,* 4 Wheaton 225.

"When there is a misunderstanding as to the terms of a contract, neither party is liable in law or equity. * * * When a contract is a unit and left uncertain in one particular, the whole will be regarded as only inchoate, because the parties have not been *ad litem,* and therefore neither is bound. * * * A proposal to accept, or acceptance upon terms varying from those offered, is a rejection of the offer." *First National Bank* v. *Hall,* 101 U. S. 43.

While it thus appears that the plaintiff was not entitled to recover on the cause of action alleged in the complaint, nevertheless justice and equity demand that he should have compensation for the use of the tobacco house during the time the defendants were in possession thereof, after deducting any amount due the defendants, by reason of the alleged failure of the plaintiff to make the proper repairs. Therefore, leave is hereby given the plaintiff to amend his complaint by setting up a cause of action based upon a *quantum meruit.*

Appeal dismissed.

MR. JUSTICE WATTS *concurs.*

MR. JUSTICE FRASER *concurs in the result.*

MR. JUSTICE HYDRICK, *dissenting.* I do not think that the opinion of the Court on the former appeal in this case holds that the letters in evidence "were not sufficient to show an agreement between the said parties," as said by the Chief Justice. The actual holding was that the Circuit Court "erred in ruling that the said letters made a complete contract." The converse of that ruling, to wit, that the letters did not make a complete contract, would, under the reasoning of the Court, have been equally erroneous. The reasoning of the Court leads to the conclusion that the letters, con-

.strued in the light of all the circumstances, and certain ambiguous expressions contained in the letters themselves, were susceptible of more than one inference, and, therefore, that it was a question of fact for the jury to say whether the parties meant to contract by their correspondence, or were only settling the terms of an agreement into which they proposed to enter, and which was to be formally drawn up and executed by them before they would be bound by it. It seems to me that no other inference can be drawn from the quotations used by the Court, especially those from *Glover* v. *Gasque, West* v. *Smith,* and Paige on Contracts. Let us consider, for a moment, the ambiguous expressions contained in the letters, which were referred to in the former decision, and which lead to the conclusion that the letters were susceptible of more than one inference. In exhibit "B" the plaintiff offers to rent the warehouse to defendant for $850.00, provided he accepts the offer promptly, and adds: "If you want it we can arrange the rent agreement when you come down," etc. In "C," defendant unqualifiedly accepts the offer, and adds: "You can send me copy of contract; will arrange rent agreement when come down." In "D," plaintiff replies that he "considers it a bargain or trade for rent," and adds: "We can arrange the agreement when you come down," etc. Now, when they spoke of "arranging the agreement" did they mean they had agreed and would put this agreement into a formal writing, or did they mean that only certain elements of the agreement had been settled, to wit, that the plaintiff would let and the defendant take the warehouse at the stipulated price, but that other details of the agreement were yet to be settled or arranged before there would be a complete contract? And, also, when, in "E," defendant said: "I am ready to make a contract for your warehouse," and when plaintiff, in reply, said: "We can fix up our contract," did they mean that they would put into writing and formally

execute a contract which had already been made? It seems to me these are the issues of fact which the Court should have submitted to the jury. I think the Court could have said, on the former appeal, with less danger of invading the province of the jury, that the letters did make a contract, than it can say, on this appeal, that they do not. And it seems to me clear that the Court cannot, without deciding an issue of fact, hold that the letters are not sufficient to show an agreement between the parties.

Nor does it appear from the negotiations between the parties that the agreement was to be reduced to writing before it should become effective. The fact that possession of the warehouse was given by the plaintiff and taken by the defendant before any attempt was made to reduce the agreement to writing tends strongly to prove the contrary.

If the parties actually agreed upon the terms of the contract, the fact that they failed to agree upon the writing. which was intended merely as a memorial of their agreement, cannot have the effect of annulling the agreement which they had made. Nor is their failure to agree upon a writing conclusive of the fact that they had not made a contract. I see no reason why the parties to a valid contract, resting entirely in parol, should not be bound by it, even though they also agreed that it should be reduced to writing and signed by them. If that part of the agreement failed because one of them refused to sign it without insertion of terms or stipulations which had not been agreed upon, and which were, therefore, not parts of the contract made, unless, of course, the agreement was that the contract should not be binding until it was reduced to writing and executed. There was no such express agreement in this case, and that it should not be implied is strongly evidenced by the fact already stated, that possession of the warehouse was given and taken before any attempt was made to put the contract in writing. The correspondence between the

parties with regard to repairs made by the defendant also tends to negative such a conclusion.

For these reasons, I think the judgment should be reversed.

Mr. Justice Woods *concurs.*