434   Smith Bros. Grain Co. *v.* Adluh Milling Co.

Syllabus                                    [128 S. C.

---

## 11507

### SMITH BROS. GRAIN CO. v. ADLUH MILLING CO.

#### (122 S. E., 868)

1. Novation—Facts Held to Show Novation of Contract to Sell Oats.—Where, by original contract, plaintiff agreed to sell 6,000 bushels of oats f. o. b. Fort Worth, Texas, and later agreed to cancel 1,000 bushels of the 4,500 remaining undelivered bushels, and defendant agreed to accept 3,500 bushels on storage at Columbia in satisfaction of the contract, *held* that later contract was a novation of the original.

2. Novation—"Novation" Defined.—A "novation" of a contract is a mutual agreement between all parties concerned for discharge of a valid existing obligation by substitution of a new valid obligation on debtor's part.

3. Sales—Promise to Accept and Pay for Oats, Made After Inspection, Waiver of Right to Object to Their Condition.—Where, after buyer had inspected oats he wrote seller without mentioning result of inspection and reiterated his promise to accept and pay for them, *held* that buyer waived his right to object to condition of oats.

4. Sales—Acceptance After Lapse of Reasonable Time Within Which to Make Inspection Waiver of Objections.—Buyer has a reasonable time within which to inspect goods; but, if he knows of defects or accepts them without inspection after lapse of a reasonable time, he waives all objections to their condition.

5. SALES—REPLY STATING CONDITION OF SHIPMENT HELD NOT ACCEPT-
ANCE OF OFFER.—Where, after parties had entered into a novation,
plaintiff wrote expressing a willingness to ship in accordance with
original contract providing for single shipment, a reply requiring
shipment in two cars five days apart *held* not an acceptance of offer.

Before WHALEY, J., Richland County, May Term, 1923.
Reversed.

Action by the Smith Bros. Grain Company against the
Adluh Milling Co. Judgment for defendant, and plaintiff
appeals.

*Messrs. Graydon & Graydon,* for appellant, cite: *Defenses
unavailable under pleadings, Judge's charge as to waiver,
modification, etc.:* 77 Fed., 406; 88 Mo. App., 271; 55 N.
Y. S., 133; Code Civ. Proc., 500; 84 N. Y. S., 983; 57
N. Y., 821; 57 N. E., 57; 48 S. E., 259; 65 N. E., 1061;
65 N. W., 780; 9 Cyc., 734; 121 Ala., 272. *Court should
have construed written contract:* 3 S. C., 251; 15 S. C.,
10; 17 S. C., 477; 19 S. C., 121; 2 Page on Con., Sec.
1129; 16 Cyc., 1072.

*Messrs. Benet Shand & McGowan,* for respondent, cite:
*General denial:* Pom. Code Rem. (4th Ed.) Sec. 546, 547,
659; 67 S. C., 403; 21 R. C. L., Sec. 123, 124; 48 S. C.,
138; 60 S. C., 373. *Affirmative defense:* 51 S. C., 92;
Modification; Elliot on Con. Sec. 243.

May 13, 1924.

The opinion of the Court was delivered by MR. JUSTICE
COTHRAN.

Action for damages on account of the alleged breach
of a contract under which the plaintiff agreed to sell, and
the defendant to buy, upon certain terms, a quantity of
oats. The plaintiffs laid their damages at $1,789.20. The
case was tried before Hon. M. S. Whaley, County Judge,
and resulted in a verdict for the defendant. The plaintiffs
have appealed.

436 Smith Bros. Grain Co. *v.* Adluh Milling Co.

Opinion                                            [128 S. C.

The facts in this exceedingly complicated controversy appear to be as follows:

On June 3, 1920, the plaintiffs, grain merchants at Fort Worth, Tex., entered into a written contract with Columbia Grain and Provision Company, of Columbia, S. C., to sell them 6,000 bushels of No. 3 red oats, in new 5-bushel sacks, at $1.14 per bushel, delivered at Columbia, shipment to be made in September at sellers' option. Subsequently the defendant took over and assumed the above contract. Under it, 1,500 bushels were delivered and paid for, leaving 4,500 bushels undelivered.

In September, the plaintiffs had on storage in Columbia 3,500 bushels of No. 2 oats (a grade better than No. 3), which had been turned back upon their hands by other buyers for causes unexplained. On September 23d, the plaintiffs proposed to the defendant to cancel 1,000 bushels of the 4,500 undelivered, at $1 per bushel, and to deliver the 3,500 on storage to the defendant in satisfaction of the June contract. Their proposition was accepted by the defendant on September 28th, "Provided they grade in accordance with our contract." The plaintiffs were to pay the storage charges up to October 25th, and at that time the defendant was to accept and pay for the oats. The cancellation of the 1,000 bushels of the June contract involved a loss of 14 cents per bushel, $140 to the defendant, which after some delay, was paid. The evidence tends to show that at some time, not definitely fixed, between October 20th and 25th, the defendant had an inspection made of the oats on storage, and found considerable damage had been suffered in cut and torn sacks.

On October 27th, the defendant wrote the plaintiffs, making no mention of the defective condition of the shipment, and renewing or reiterating its engagement to accept and pay for the oats.

No report or complaint as to the condition of the oats was made by the defendant until November 6th, when it

wrote to the plaintiffs complaining that the sacks were in bad order and some of them only partly filled, and declining to carry out their engagement to accept and pay for the oats, but offering to take out and pay for the sound packages and leave the damaged ones in the warehouse subject to the order of the plaintiffs, closing their letter with this statement:

"If this does not meet with your approval, you may ship us 3,500 bushels from your warehouse in Texas. Kindly advise us immediately what you expect to do."

On November 12th, the plaintiffs wrote protesting against the defendant's refusal to carry out the September contract, and offering to satisfy it by having the damaged packages resacked. They, however, stated:

"We hope that this will make matters satisfactory, but if not please wire us upon receipt of this letter telling us definitely just what you will·do, so that we will know what to expect. * * * We are perfectly willing to ship other oats from Fort Worth, but if we ship we would ship No. 3 red oats as per contract with you. * * * Please wire us however if you are not going to accept the oats there and we will proceed to ship other oats in their stead strictly in accordance with contract. * * * If you do not do so we will ship oats that we have been carrying here for the past 45 days."

On November 15th the defendant wired: "Letter 12th. Ship 3,500 bushels in two cars five days apart," and followed with a letter to the same effect.

On November 15th, upon receipt of the defendant's telegram of that date, the plaintiffs wired that they would not ship the oats unless the defendant had the bank to wire .that plaintiffs' draft would be protected.

On November 16th the defendant wired directing shipment as indicated on the 15th, and declining to comply with the requirement that the bank protect the drafts, upon the

ground that banks do not protect drafts drawn upon their customers.

On November 17th, the defendant wired, "We renew our offer as outlined, in our wire yesterday," and asked to be advised of the plaintiffs' intentions.

On November 19th, the plaintiff wired the defendant declining to ship the Texas oats, and giving notice that the oats on storage would be tendered, and, if not accepted, would be sold for defendant's account.

On November 22d, defendant wired to know whether or not the plaintiff intended to live up to their promise; followed by a letter of the 23d along the same lines, and by a letter of the 24th.

No reply to these communications having been received, the defendant on December 4th wired canceling the contract, for failure of plaintiffs to comply with what it conceived the new agreement of November 15th:

"Inasmuch as you have ignored our shipping instructions and violated contract, cancel balance due us on same."

Afterwards Smith Bros. disposed of the two carloads in storage at 65 cents per bushel, and billed the Adluh Company with:

| | |
|---|---:|
| 46 cents per bu. loss on 3,500 bushels | $1,610.00 |
| Storage from Oct. 25/20 to date of sale | 63.00 |
| Expenses of resale | 50.00 |
| Brokerage | 35.00 |
| Interest | 31.20 |
| Total | $1,789.20 |

At the close of the testimony, the plaintiffs moved for a directed verdict, upon the ground that the evidence showed beyond dispute that the Adluh Company agreed for a consideration to accept and pay for the oats on storage, and that after they had inspected the oats on October 20th to 25th, they wrote the plaintiffs on the 27th, agreeing to accept and pay for them. The motion was resisted on the

ground that it was a question of fact whether or not the defendant was justified in refusing to comply, by reason of the alleged condition of the shipment. The motion was refused.

The presiding Judge charged the jury in substance that the vital issues in the case were whether or not, after the time had expired for the consummation of the modified contract, the parties entered into a new agreement, whereby the September agreement was abandoned and the plaintiffs agreed to ship the oats from Texas under the original contract; and whether or not, if such agreement was not entered into, the defendant was justified in refusing to accept the shipment on account of its condition. He held that if the defendant, after inspecting the oats, wrote the letter of October 27th, that amounted to a waiver of any objection to the condition of the shipment, and left it to the jury to say whether or not that letter was in fact written upon the day it was dated.

The evidence discloses a singular misconception on the part of both plaintiffs and defendant as to the real cause of action and defense. Both parties in·the pleadings rely upon the original June contract when, as a matter of fact, it is conceded on all sides that the June contract was superseded bodily by the September agreement, which abrogated it and created a new contract, by which the defendant agreed to accept the oats on storage in satisfaction of the 4,500 bushels undelivered, and to settle with the plaintiffs by October 25th at the original price of $1.14 per bushel  The plaintiffs' cause of action was therefore upon the September agreement, the new contract. The defendant now contends that the September contract was superseded by the November agreement, which created a new contract, by which the plaintiffs agreed to abrogate the September contract and to ship 3,500 bushels from Texas according to the terms of the June contract. Its defense was therefore based upon

440 Smith Bros. Grain Co. *v.* Adluh Milling Co.

Opinion [128 S. C.

the establishment of the November agreement and noncompliance therewith by the plaintiffs.

At the risk of repetition, to put the situation in other words: The plaintiffs contend now, in evidence, that the June contract was modified by the agreement of September 28th, by which the defendant agreed to accept and pay for the 3,500 bushels on storage, within 30 days, and that they have without just excuse defaulted. The defendant, while admitting the original contract of June 3d and the modification of September 28th, contends that after it had complained of the condition of the shipment and declined to accept and pay for it, on November 8th, the plaintiffs proposed in their letter of 12th to abandon the modified contract of September 28th, and to ship 3,500 bushels from Texas, under the terms of the original contract of June 3d, which proposition was accepted, and that the plaintiffs defaulted in that agreement.

Inasmuch as the defendant has interposed no objection to the plaintiffs' recovering upon a contract which they have not alleged, and the plaintiffs have interposed no objection to a defense arising out of a contract which the defendant has not alleged, I propose to treat the case as if both parties had moved for amendments of the pleadings, to conform to the evidence, and that such amendments were allowed; in other words, that the complaint is based upon a breach of the September agreement, and the answer upon a breach of the November agreement abrogating the September agreement.

In this aspect of the pleadings, and in view of the evidence, the motion of the plaintiffs for a directed verdict should have been granted.

The original contract of June 3, 1920, by which the plaintiffs agreed to sell to the Columbia Grain & Provision Company (afterwards assumed by the defendant) 6,000 bushels of oats, at $1.14 per bushel, f. o. b. Fort Worth Tex., sight draft with bill of lading attached, deliverable at Columbia,

S. C., upon which 1,500 bushels were delivered and paid for, will be and has been referred to as the June contract.

The agreement of September 28, 1920, by which the plaintiffs agreed to cancel 1,000 bushels of the 4,500 undelivered, and the defendant agreed to accept the 3,500 bushels on storage, at Columbia, in satisfaction of the June contract and pay for them by October 25th, will be referred to as the September contract.

The alleged agreement of November 15, 1920, by which the plaintiffs agreed to abrogate the September contract and ship 3,500 bushels from Texas, upon the terms of the June contract, will be referred to as the November contract.

There is no question as to the establishment of the June contract; the evidence is equally undisputed as to the establishment of the September contract; the parties are at variance as to the establishment of the November contract.

The nature and effect of the September contract will be first considered. The plaintiffs had 3,500 bushels of No. 2 oats on storage in Columbia, which had, for some reason, been turned back upon their hands by the purchasers; being under obligation to deliver 4,500 bushels under the June contract, and anxious to dispose of the shipment on storage, the plaintiffs made a proposition to the defendant that they would cancel 1,000 bushels of the contract at $1 per bushel (the defendant paying the difference, 14 cents, between the contract price, $1.14 and the $1), if the defendant would accept and pay for the 3,500 bushels in storage by October 25th, the plaintiffs paying the storage charges in the meantime. To this proposition the defendant promptly agreed. It manifestly was to their mutual advantage; the defendant thereby obtained a better grade of oats (No. 2 instead of No. 3), was relieved of the freight charges, which it would have paid under the June contract, and was relieved of a costly contract to the extent of 1,000 bushels, oats in the meantime having heavily

declined. The defendant paid the loss, $140, on the 1,000 bushels canceled, and in various communications between September 28th and October 25th, reiterated its engagement to accept the oats on storage, promising that in the event that it used any of these oats (which was expressly permitted by the plaintiffs), before October 25th, a deposit to cover would be made to the credit of plaintiffs in bank, and that, if none were so used, the whole amount due would be paid for on October 25th.

The legal effect of this transaction, the September contract was a novation of the June contract; "a mutual agreement between all parties concerned, for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor." 20 R. C. L. 360; 29 Cyc., 1130. It created a new contractual relation, and the rights and obligations of the parties are to be determined by it, the original contract having been extinguished by the novation.

The plaintiffs' cause of action must therefore be referred to the September contract, and the defendant's defense, to an attack upon that contract.

The September contract is admitted; it was partially performed by the defendant's accounting for the loss on the canceled 1,000 bushels; the oats were in the warehouse and were tendered to the defendant; the defendant refused to accept and pay for them; they were disposed of by the plaintiffs, resulting in a loss of $1,789.20. These facts created a *prima facie* right of the plaintiffs to recover.

The defendant denies its liability upon two grounds; (1) That the condition of the oats was such as to justify it in rejecting them and in refusing to comply with the September contract; (2) that under the alleged November contract, the plaintiffs have made default in their engagements.

Upon the first ground, the defendant contends that the oats on storage were in bad condition by reason of a large number of the sacks being cut by rats, torn, and only partly filled.

The defendant was advised by the plaintiffs, as early as October 2d, as appears from a letter of the plaintiffs, that some of the sacks were torn and that the oats would have to be resacked to some extent, the cost of which they have always been willing to assume. As early as September 29th, the plaintiffs, yielding to the suggestion of the defendant, agreed to allow the defendant to withdraw such of the oats as was desired before the maturity of the obligation to pay for them on October 25th, upon depositing an amount to cover in the bank to plaintic's credit. The defendant had therefore ample opportunity to inspect the oats. It not only had ample opportunity to do so, but it actually availed itself of that opportunity; for at some indefinite time between October 20th and 25th, an employee of the defendant inspected the oats and reported the cut and torn sacks to the defendant. Two days after the maturity of the September contract, the defendant wrote a letter to the plaintiffs, dated October 27th, making no mention whatever of the inspection made prior thereto, and reiterating its promise to accept the oats and deliver to the bank a check in full to cover the price. The evidence is conclusive that the defendant has waived its right now to object to the condition of the oats. *Supply Co. v. Jones,* 87 S. C., 426; 69 S. E., 881. The buyer has, of course, a reasonable time within which to inspect the goods; but if he knows of the defects, or accepts them without inspection after the lapse of a reasonable time, he is held to have waived all objections to their condition. In the present case the evidence is conclusive that the defendant, not only had such reasonable time, but knew of the condition, and after its own inspection, acknowledged its liability; it strongly tends also to excite the suspicion that the declin-

ing market was a potent factor in the defendant's refusal to carry out its engagement.

Upon the second ground, the defendant contends that its obligation under the September contract was extinguished by the November contract; that is that the plaintiffs on November 12th proposed that the parties abandon the September contract, and that the plaintiffs would ship 3,500 bushels from Texas upon the terms of the June contract, and that this proposition was accepted by it on November 15th.

The vital issue arises whether or not the evidence shows a completed contract by the parties, as thus claimed by the defendant. If it does, the November contract constituted a novation of the September contract and it being admitted that the plaintiffs refused to comply with the November contract, they would have no standing in court. But is this true?

In the letter of the plaintiffs, dated November 12th, in reply to that of the defendant, dated the 8th (notifying the plaintiffs of the bad condition of the oats, and their refusal on that account to comply with the September contract, and making the suggestion), the plaintiffs, after protesting against the defendant's determination, expressed their willingness to ship 3,500 bushels of oats from Texas, "strictly in accordance with contract" (that is, the June contract). That contract provided for a shipment with sight draft and bill of lading attached, which meant a single shipment and payment of draft for the whole amount, at sight. The defendant in reply wired the plaintiffs on the 15th: "Letter of 12th. Ship 3,500 bushels in two cars, five days apart," and confirmed the telegram by letter of same date, to same effect. On the 16th the plaintiffs wired that they would not ship the oats, unless the bank wired that it would protect their draft. In reply the defendants wired plaintiffs to ship according to their accepted proposition, stating that banks do not protect the drafts upon its customers,

Smith Bros. Grain Co. *v.* Adluh Milling Co. 445

434]                    Spring Term, 1924

and confirmed telegram by letter of the 16th. On the 17th, defendants wired, "we renew offer outlined in our wire yesterday," and asking to be advised of the plaintiffs' intentions. This telegram is significant as tending to show that at that time the defendant was not assured that it had a completed contract.

On the 19th plaintiffs wired declining to ship the Texas oats. On 22d, defendant wired plaintiffs to know whether they intended to live up to the proposition or not, followed by letter of 23d along same line, and again by letter of 24th. On December 4th, defendant wired canceling contract, for failure of plaintiff to comply with the November contract.

It will be noted that the plaintiffs had on hand in Texas, and had had for 45 days, the No. 3 oats, from which they expected to ship the 3,500 bushels. They were to be shipped upon the terms of the original contract, sight draft with bill of lading attached. There was nothing in that contract which permitted or required split shipments, at different times. If the defendant expected to bind the plaintiffs to the proposition which they made, it was incumbent upon it to accept the proposition in identical terms and unconditionally. It did not do so, but imposed a condition which required the plaintiffs to load one car, ship it, draw for the price, wait five days, and repeat the operation. Certainly the plaintiffs' proposition did not contemplate this procedure, and the fact that it was insisted upon by the defendant in its acceptance is an admission that it did not. Evidently it was interposed for the benefit of the defendant, which thereby would secure a grace of five days (during which time the plaintiffs would be out of their money), a benefit however trifling, which the defendant would not have had under the plaintiffs' proposition.

If the defendant had the right to impose the condition that the shipment should not come all at once, but "in two cars, five days apart," there is no reason why it could not

446  Smith Bros. Grain Co. v. Adluh Milling Co.

Opinion                                    [128 S. C.—434]

have required the entire shipment to have been made in 30 or 60 days, or that one car, should be shipped immediately and the other delayed for a like period; the plaintiffs in the meantime losing the use of their money or paying interest, and the defendant doing business on the plaintiffs' capital, with the chance of a rising market. The loss to the plaintiffs in the present instance would have been small, it is true, 7 per cent, on $2,000 for five days, about $2; but the matter for consideration is the imposition of a condition which alters the proposition which was made.

In *Kennedy v. Gramling,* 33 S. C., 367; 11 S. E., 1081; 26 Am. St. Rep., 676, the proposed purchaser of real estate made a written offer of a certain amount to the owner, the owner replied in writing, "I will accept your offer at $3,800, *this is to be clear of expenses of title, etc."* In an action by the owner for specific performance, the Court held that the words italicized above, introduced into the acceptance an additional condition, which prevented the acceptance from creating a valid completed contract. See also, 13 C. J., 281; 6 R. C. L., 608, and the many cases cited to sustain the text, which announced the proposition that an acceptance to be effectual must be identical with the offer and unconditional. *Lewis v. Johnson,* 123 Minn., 409; 143 N. W., 1127; L. R. A., 1915D, 150; 1 Parson, Contracts, 477; Second Decennial Digest, Contracts, 24. *Eliason v. Henshaw,* 4 Wheat. 225; 4 L. Ed., 556; 1 Roses Notes, 894.

In *Holliday v. Pegram,* 94 S. C., 292; 77 S. E., 1014, the following was quoted with approval from the Wheaton Case, above:

"An offer of a bargain * * * imposes no obligation. * * * until it is accepted * * * according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it."

After the plaintiffs received the alleged acceptance, they made no confirmation of it or assented to the modification, but replied with a condition on their part that they would not ship the Texas oats unless the bank would wire an agreement to protect their drafts. However unreasonable this condition may have been, it was not illegal, and was one which the plaintiffs, in view of their experience with the defendant, deemed it expedient to impose. It was not impossible, or even contrary to common practice, particularly in reference to perishable fruits and vegetables. The defendant refused even to apply to its bank to do so.

The defendant having utterly failed to sustain either of the grounds of its defense, the result was inevitable that a verdict should have been directed in favor of the plaintiffs.

Judgment reversed.

MR. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.